UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------- x

CAREY JEROME SMITH,

                              Plaintiff,

       -against-

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.

----------------------------------------------------------- x

                                         MEMORANDUM &
                                         ORDER

                                         21-CV-5048 (MMH)

**MARCIA M. HENRY**, United States Magistrate Judge:

      Plaintiff Carey Jerome Smith commenced this action to challenge Defendant Commissioner of Social Security's final decision that Plaintiff was not disabled and therefore not entitled to Supplemental Security Income ("SSI"), pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* (*See generally* Compl. ECF No. 1.)[1]  Before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  (Pl. Mot., ECF No. 17; Def. Mem., ECF No. 16.)  For the reasons set forth below, Plaintiff's motion is **denied** and Defendant's cross-motion is **granted**.

## I.   BACKGROUND[2]

### A.   Procedural History

      On April 28, 2018, Plaintiff filed an application for social security benefits in connection with an alleged disability that began on April 1, 2017.  (R. at 13, 310–11.)  The

---

[1] All citations to documents filed on ECF are to the ECF document number and pagination in the ECF header, with one exception: citations to the Certified Administrative Record ("R.") at ECF Nos. 9 and 10 are to the stamped page number on the bottom right corner of the document.

[2] The Court considers the facts set forth in the parties' Joint Stipulation of Facts (ECF No. 19) and the Certified Administrative Record (ECF Nos. 9–10.)

Social Security Administration ("SSA") denied Plaintiff's application on August 27, 2018. (*Id.* at 144.) Plaintiff then filed a written request for a hearing before an Administrative Law Judge ("ALJ") on October 10, 2018. (*Id.* at 159.) Plaintiff appeared before ALJ M. Reeves for a hearing on November 22, 2019, represented by counsel, during which Vocational Expert ("VE") Alida Coles testified. (*Id.* at 101–24.) On August 13, 2020, Plaintiff appeared before ALJ Janet McEneaney ("the ALJ") for a second hearing via telephone, again with counsel, during which Plaintiff and VE Susan Howard testified.[3] (*Id.* at 31–64.)

The ALJ rendered decision on October 21, 2020, finding that Plaintiff was not disabled under Section 1614(a)(3)(A) of the Social Security Act. (*Id.* at 10–24.) Plaintiff requested review of the ALJ's decision, which the Appeals Council denied on July 9, 2021, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 1–4.)

On September 9, 2021, Plaintiff filed the instant lawsuit, which was assigned to the Honorable Eric R. Komitee. (Compl., ECF No. 1.) Defendant moved for judgment on the pleadings on May 5, 2022, requesting affirmance of the Commissioner's decision and dismissal of the case. (*See generally* Def. Mot., ECF No. 16.) On June 22, 2022, Plaintiff moved for judgment on the pleadings,[4] requesting remand of this case for a directed finding of disability and calculation of benefits, or in the alternative, remand for further administrative

---

[3] For reasons unclear in the administrative record, ALJ Reeves did not issue a decision on Plaintiff's application despite the in-person hearing on November 22, 2019. (R. at 101–24.) Subsequently, the SSA issued several hearing notices dated February 3, 2020; May 26, 2020; and July 22, 2020 for hearings before ALJ McEneaney, and Plaintiff ultimately appeared for a second hearing on August 13, 2020 before ALJ McEneaney. (*See id.* at 231, 256, 278.) Because ALJ McEneaney issued the final decision, the Court refers to her as "the ALJ" in this case.

[4] Plaintiff served the memorandum of law on February 9, 2022. (Pl. Mem., ECF No. 18.)

proceedings. (Pl. Mem., ECF No. 18 at 17.) On June 27, 2022, the parties filed a joint stipulation of relevant facts from the administrative record. (Stip., ECF No. 19.) In June 2023, the parties consented to the undersigned's jurisdiction. (ECF Nos. 21–22.) On March 27, 2024, the parties appeared for a motion hearing, where the Court heard oral argument and reserved decision. (Mar. 27, 2024 Min. Entry; Hearing Transcript ("Tr."), ECF No. 23.)

### B.      Factual Background

#### 1.      Non-Medical Evidence

##### a.      Plaintiff's Background and Testimony

Plaintiff, a transgender woman, was 35 years old at the time of onset of her alleged disability beginning on April 1, 2017. (R. at 126.) She has a ninth-grade education, enrolled in special education programs, and resided with her mother at the time of the administrative proceedings. (*Id.* at 34, 347, 638, 1137.) Plaintiff was previously incarcerated at Five Points Correctional Facility after a robbery conviction and was released in 2015. (*Id.* at 115, 1137.) Plaintiff completed training and worked as a home health aide from March to April 2017. (*Id.* at 347.) She has held no other substantial employment. (*Id.*)

During the November 22, 2019 hearing before ALJ Reeves, Plaintiff testified that she is not able to work "[m]ostly because of [her] mental health." (*Id.* at 106.) She testified that she suffers from severe depression, anxiety, post-traumatic stress disorder ("PTSD"), paranoia, and depression, and hears voices that distract her and tell her to kill herself. (*Id.* 106–07, 109, 111, 116–18.) When asked how often the voices distract her, Plaintiff answered that "[it] happens like probably five times a day or so. It happens a lot." (*Id.* at 119.) Plaintiff stated that she cannot travel and be around people, and that it is "hard to interact with a person one-on-one" other than her mother. (*Id.* at 110–11.) Plaintiff also testified that she takes Vistaril

3

for anxiety, attends a weekly drug treatment program, and regularly meets with a counselor. (*Id.* at 112, 117–19.)

At the second hearing before the ALJ on August 13, 2020, Plaintiff again testified to her mental health issues and symptoms. (*Id.* at 31.) She testified that she was diagnosed with schizophrenia and suffers from panic attacks and hears voices that "don't go away" and tell her "negative stuff all the time." (*Id.* at 44–46.) She stated that as a transgender woman, she has trouble traveling during rush hour and being in large crowds because she feels paranoid that someone will attack her. (*Id.* at 46–47.) Plaintiff also stated that she has gender dysphoria and feels suicidal "most of the time." (*Id.* at 54.) Plaintiff stated that she takes mainly two medications, Vistaril for anxiety and Olanzapine for schizophrenia. (*Id.* at 42.) Plaintiff testified that she has been sober from alcohol for almost one year, and that she stopped taking recreational drugs. (*Id.* at 51.) Plaintiff acknowledged that she stopped working as a home health aide for her stepfather in 2017 after the job became "overwhelming," and since then has not had another job. (*Id.* at 40–41.)

### b.    Vocational Experts' Testimony

VE Alida Coles testified at Plaintiff's November 2019 hearing before ALJ Reeves and responded to a series of hypotheticals. (*Id.* at 120–23.) First, ALJ Reeves asked whether Plaintiff's past work could be performed if Plaintiff was "off task two hours in an eight-hour period," and VE responded no. (*Id.*) Second, when asked if Plaintiff could perform her past work if the voices she heard were under control and she was off task "no more than 10 percent," VE Coles again answered no. (*Id.*) ALJ Reeves then asked VE Coles for names of two jobs that Plaintiff could perform if she was "9 percent off task" and that were "short, simple, repetitive tasks, and no dealing with the general public" with "occasional dealing with the

coworkers and supervisors." (*Id.* at 121.)  VE Coles provided "collator operator" and "linen

supply load builder." (*Id.*)  Plaintiff's counsel then asked whether Plaintiff would be able to

complete those jobs if she had problems with concentration, or in vocational terms, "be up to

15 percent off task or absent," and VE Coles responded no. (*Id.* at 122.)

At the August 2020 hearing, VE Susan Howard testified before the ALJ. (*Id.* at 57–

62.)  The ALJ presented VE Howard with a series of hypotheticals for a person of the same

age, education, and work experience as Plaintiff at different functional capacities. (*Id.* at 59.)

In response to the ALJ's first hypothetical for work limited to "simple routine tasks; work in a

low stress job" with occasional decision-making and occasional changes in the work setting,

VE Howard identified "cleaner industrial" and "kitchen helper" as appropriate jobs.[5] (*Id.* at

59–60.)  For the second hypothetical, which added the limitation of "occasional interaction

with co-workers," VE Howard responded that the same jobs would apply. (*Id.* at 60.)  For the

third hypothetical, which added another limitation of "four unexcused or unscheduled absences

a month," VE Howard responded that there would be no jobs available. (*Id.*)  The ALJ did not

ask pose other hypotheticals. (*Id.*)  Plaintiff's counsel then asked whether there would be jobs

available if "contact with the public, supervisors, and co-workers were limited to brief and

superficial contact," and VE Howard responded that "in my experience, there's no such thing

in the workplace as superficial interaction with supervisors . . . I think it would be possible for

brief, superficial interaction with the public and co-workers, but not with supervisors." (*Id.* at

---

[5] VE Howard also listed "laundry laborer" but retracted it because of the "potential of fast paced" tasks. (R. at 60.)

61.)  Finally, VE Howard testified that for the jobs previously listed, an employer would tolerate up to ten percent level of being off task.  (*Id.* at 62.)

### 2. Medical Evidence

#### a. Treatment Before Alleged Onset of Disability

Plaintiff reported ongoing mental health issues prior to the onset of her alleged disability on April 1, 2017.  On October 22, 2015, Plaintiff was seen by Subhash Candra Sikder, D.O. at the East New York Health Center for an initial evaluation, where she reported feeling down due to depression and a history of migraine headaches and depression.  (*Id.* at 464–65.)  DO Sikder assessed Plaintiff with gender identity disorder in adolescence and adulthood, functional dyspepsia, and unspecified hemorrhoids, among other diseases, and prescribed various medications for treatment.  (*Id.* at 465, 470.)  From October 2015 to April 2017, Plaintiff saw Joseph DePaola, NPP, on an ongoing basis for psychiatric treatment and evaluation.  (*Id.* at 470–72, 476–78, 482–84, 486–88, 492–95, 505–07, 508–510, 516–18, 519–21, 525–27.)  From October 2015 to January 2016, NPP DePaola assessed Plaintiff with unspecified mood affective disorder, major depressive disorder with psychotic features, chronic PTSD, polysubstance dependence in remission, gender identity disorder in adolescence and adulthood, borderline personality disorder, depressive type schizoaffective disorder, anxiety disorder, and cocaine and alcohol abuse.  (*Id.* at 470–71, 476–77, 483–84, 487–88.)

A few months later, in August 2016, Plaintiff reported continuing to hear voices all day and becoming agitated, being suicidal, and having a history of suicidal ideation and attempts.  (*Id.* at 492.)  In September 2016, Plaintiff reported relapse on crack/cocaine and agreed to consider rehab.  (*Id.* at 505.)  NPP DePaola continued the medication regimen and referred

Plaintiff to psychotherapy for further support. (*Id.*) In December 2016, NPP DePaola noted improvements: Plaintiff reported being sober and her "mood overall as 'good' since being out of jail." (*Id.* at 508.) Even though Plaintiff still heard voices "every day all day," NPP DePaola assessed that "[Plaintiff] does not appear to be actively hallucinating in [his] assessment." (*Id.*) In January 2017, NPP DePaola noted "continued benefit with current medications" and that Plaintiff reported "doing great" because she "has been working about 20 hours per week as a home health aide." (*Id.* at 516.) NPP DePaola noted that Plaintiff was alert and attentive with a cooperative attitude, was in "ok" mood, had reactive affect, good insight, good judgment/impulsivity, and no delusions. (*Id.* at 509–10, 517–18.) The same qualities were reported in the February 2017 evaluation notes. (*Id.* at 520–21.)

### b.    Treatment After Alleged Onset of Disability

Plaintiff met with NPP DePaola again on April 11, 2017, ten days after her alleged onset of disability on April 1, 2017. (*Id.* at 525; Compl., ECF No. 1 ¶ 6.) Plaintiff reported testing positive for cocaine at her recent parole meeting and therefore was "not [doing] too good." (R. at 525.) NPP DePaola noted that Plaintiff's mood was overall stable despite the stressors, and that Plaintiff remained "optimistic about the future" and complied with medications. (*Id.*)

Plaintiff did not re-engage in care with NPP DePaola again until almost one year later, on March 12, 2018, after being released from rehab for cocaine use in October 2017.[6] (*Id.* at 533.) Plaintiff reported continued auditory hallucinations and intermittent vague paranoia feelings that she was being watched or followed, but denied delusions. (*Id.*) On April 28,

---

[6] No treatment record exists between April 11, 2017, and March 12, 2018. (*See id.* at 525, 528.)

2018, Plaintiff applied for Social Security benefits. (Pl. Mem., ECF No. 18 at 4.) Plaintiff continued to meet with NPP DePaola for the rest of 2018. In May 2018, Plaintiff was noted to have been heavily drinking the night prior to the appointment but denied daily use and blackouts from alcohol. (R. at 532.) In June 2018, Plaintiff reported attending detox a week earlier for crack/cocaine use and denied acute depressive and suicidal ideation. (*Id.* at 692.) In August, Plaintiff reported being "all right" and stated that her auditory hallucinations were less frequent and severe. (*Id.* at 686.) She agreed to continue taking medication. (*Id.*) In September, Plaintiff reported that she was sober and denied unstable mood but reported feeling "overwhelmed by psychological stressors (financial hardships, parole, living situation)." (*Id.* at 683.) Similar symptoms were reported during the October and November 2018 follow up appointments. (*Id.* at 677, 680.) In all evaluations from June to November 2018, NPP DePaola assessed that Plaintiff was attentive and alert with cooperative behavior, had good grooming, normal motor activity, normal speech, coherent and goal directed thought processes, normal thought content, and good judgment/impulsivity. (*Id.* at 675, 678, 684, 687, 690, 693.)

Beginning in December 2018, Plaintiff met with a new provider, James Herrington, NPP, due to NPP DePaola's departure from the clinic. (*Id.* at 671, 677.) NPP Herrington reported similar findings as NPP DePaola. (*Id.* at 663, 667, 671.) In February 2019, Plaintiff expressed anxiety related to an upcoming breast augmentation and facial feminization surgery, but otherwise her mood was noted to be "euthymic," that she was sleeping well, and that she had good focus/concentration and energy/motivation. (*Id.* at 663.) Plaintiff reported auditory hallucinations two to three times a week, but that she ignored the voices. (*Id.*)

Starting in March 2019 through July 2020, Plaintiff began to meet with Margarette Dessources, PMHNP. (*Id.* at 659.) In March 2019, Plaintiff reported having little interest or

pleasure in doing things and was assessed with moderate depression, but in May and June 2019, Plaintiff reported feeling better since starting medication and denied suicidal ideation, mood swings, paranoia, manic symptoms, or acute depressive symptoms.  (*Id.* at 653, 656.) PMHNP Dessources continued Plaintiff's medications and prescribed Topamax for mood instability.  (*Id.* at 658.)  Plaintiff's mental status examination revealed that she was alert and attentive with good grooming, a pleasant and cooperative mood, appropriate behavior, normal motor activity, normal speech, coherent and goal directed thought processes, and normal thought content.  (*Id.* at 651, 654.)

In September 2019, Plaintiff again reported feeling depressed, explaining that she had run out of medication for a week and had been feeling passive suicidal ideation.  (*Id.* at 944.) PMHNP Dessources refilled Plaintiff's medications and prescribed Lexapro.  (*Id.* at 946).  In November 2019, Plaintiff reported increased anxiety and irritability related to the SSI benefits hearing.  (*Id.* at 963.)  In her follow-up appointments, however, Plaintiff began feeling better, and PMHNP Dessources continued to note in her monthly evaluations from November 2019 through June 2020, that Plaintiff had cooperative behavior, normal attention, normal speech, organized and coherent thought processes, and normal thought content.  (*Id.* at 958, 961, 964, 1137, 1142.)  In July 2020, Plaintiff reported that the medications caused her to be tired and sleepy and noted auditory hallucinations, but denied visual hallucinations or suicidal ideation, and her mood appeared stable.  (*Id.* at 1132–34.)

### c.    Medical Opinions

On July 31, 2018, Dr. Britt Gottlich, Psy. D., a consultative medical examiner, conducted a psychiatric evaluation of Plaintiff.  (*Id.* at 638–42.)  Dr. Gottlich considered Plaintiff's psychiatric and medical history, then-current functioning, her drug and alcohol

history, legal and family history, and mental status. (*Id.*) Dr. Gottlich found Plaintiff to have a cooperative demeanor, appropriate dress, well-groomed hygiene, normal motor behavior, coherent and goal directed thought processes, and full affect, but also found that Plaintiff reported feeling depressed and had mildly impaired attention and concentration due to limited intellectual functioning, mildly impaired recent and remote memory skills, below average intellectual functioning, good insight, and poor judgment. (*Id.* at 639–40.) Plaintiff reported being able to do "some light food preparation, clean, do laundry, shop, and take public transportation on [her] own." (*Id.* at 641.) Plaintiff was diagnosed with "specific learning disability per history, schizoaffective disorder, depressed type, unspecified anxiety disorder, rule out [PTSD], and cocaine use disorder in early remission." (*Id.*)

Dr. Gottlich opined that Plaintiff had "no psychological limitation for understanding, remembering, and applying simple or complex directions and instructions; sustaining concentration and performing a task at a consistent pace; and awareness of normal hazards and taking appropriate precautions." (*Id.*) However, Plaintiff showed "[m]oderate psychological limitation for using reason and judgment to make work-related decisions; sustaining an ordinary routine and regular attendance at work; and maintaining personal hygiene and appropriate attire." (*Id.*) Dr. Gottlich further noted that Plaintiff had "[m]arked psychological limitation for interacting adequately with supervisors, co-workers, and the public and regulating emotions, controlling behavior, and maintaining well-being." (*Id.*) Dr. Gottlich recommended that Plaintiff continue psychological and psychiatric treatment and continue with current drug and alcohol treatment. (*Id.*)

On August 24, 2018, state agency medical psychological consultant, Dr. C. Anderson, opined in a Residual Functional Capacity ("RFC") assessment questionnaire that Plaintiff had:

(1) moderate limitation for the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (2) moderate limitation for ability to sustain an ordinary routine without special supervision; and (3) moderate limitation for ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (4) moderate limitation for ability to accept instructions and respond appropriately to criticism from supervisors; (5) moderate limitation to respond appropriately to changes in the work setting; and (6) moderate limitation to set realistic goals or make plans independently of others. (*Id.* at 134–35.) Other abilities were found to be "not significantly limited," including the ability to "maintain attention and concentration for extended periods." (*See id.* at 134.) Dr. Anderson found that Plaintiff's allegations of schizophrenic disorder, schizoaffective disorder, depressive disorder, and anxiety are "partially consistent" with evidence in file, including treatment records from the East New York Health Center, NPP DePaola's treatment notes, and psychiatric consultative examinations. (*Id.* at 135.) Dr. Anderson ultimately determined that Plaintiff was "not disabled." (*Id.* at 137.)

On September 15, 2020, Dr. Allison Podczerwinsky, Psy. D., an independent medical examiner, submitted a medical interrogatory per the ALJ's request. (*Id.* at 1156–62.) Dr. Podczerwinsky opined that Plaintiff had: (1) mild limitations in the ability to understand, remember, or apply complex information, (2) mild limitations in the ability to concentrate, persist, or maintain pace, (3) mild to moderate limitations in the ability to interact with others, and (4) mild to moderate limitations in the ability to adapt or manage herself. (*Id.* at 1158.) Dr. Podczerwinsky further noted that "Claimant's mental health complaints are primarily due to substance use/abuse" and that the limitations with concentration and complex information

"only apply under the influence of substances." (*Id.*)  If Plaintiff is "not under the influence of substances," then there are "no difficulties with concentration, complex information" and "with managing oneself and interacting with others—fluctuating between none [and] mild [limitations]." (*Id.*)  Dr. Podczerwinsky concluded that the evidence does not establish presence of "paragraph C criteria," which is the SSA's designation of "serious and persistent" mental disorder. (*Id.* at 1160.)

## II.    LEGAL STANDARDS

### A.    Standard of Review

Under Section 405(g) of the Social Security Act, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  "In reviewing a final decision of the Commissioner, the Court's role is 'limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard.'"  *See Huma v. Kijakazi*, No. 21-CV-5709 (PKC), 2022 WL 17824049, at *4 (E.D.N.Y. Dec. 20, 2022) (quoting *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012)).  "Substantial evidence . . . is more than a mere scintilla.  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (cleaned up).  "If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld." *Duran v. Comm'r of Soc. Sec.*, 618 F. Supp. 3d 94, 98 (E.D.N.Y. 2022) (citing 42 U.S.C. § 405(g)).  "If, however, the Commissioner's decision is not supported by substantial evidence or is based on legal error, a court may set aside the decision of the Commissioner." *Nusraty v. Colvin*, 213 F. Supp. 3d

425, 436 (E.D.N.Y. 2016).  "Inquiry into legal error requires the court to ask whether the claimant has had a full hearing under the Commissioner's regulations and in accordance with the beneficent purposes of the Social Security Act." *Duran*, 618 F. Supp. 3d at 98 (cleaned up).  "The reviewing court does not have the authority to conduct a *de novo* review, and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result." *Id.* (citing *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012)).

**B.    Determination of Disability**

"The Commissioner uses a five-step process to determine whether a claimant has a disability within the meaning of the Social Security Act." *Clayton v. Comm'r of Soc. Sec. Admin.*, No. 1:20-CV-4241 (ALC), 2022 WL 985577, at *8 (S.D.N.Y. Mar. 31, 2022) (citing 20 C.F.R. § 404.1520(a)(4)).  The process is summarized as follows:

> [1] First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> [2] If [she] is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities.
>
> [3] If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider [her per se] disabled.
>
> [4] Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [she] has the residual functional capacity to perform [her] past work.
>
> [5] Finally, if the claimant is unable to perform [her] past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Selian v. Astrue*, 708 F.3d 409, 417–18 (2d Cir. 2013) (cleaned up).  "The claimant bears the burden of proof in the first four steps of the sequential inquiry; the Commissioner bears the burden in the last."  *Id.* at 418.

Where a mental impairment is alleged, a ALJ "must apply a 'special technique' at the second and third steps of the five-step evaluation framework to determine the degree, if any, of [a] claimant's mental impairment."  *Zacharopoulos v. Saul*, 516 F. Supp. 3d 211, 231 (E.D.N.Y. 2021) (citing *Petrie v. Astrue*, 412 F. App'x 401, 408 (2d Cir. 2011)).  "To evaluate the severity of a claimant's mental impairment, the ALJ rates the degree of claimant's functional limitation in four broad functional areas," known as the "paragraph B" criteria, including: "(1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself."  *Id.* (citing 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3)).  The ALJ is required to "include a specific finding as to the degree of limitation in each of the [four] functional areas."  *Id.* (citing *Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008)).  Each functional area is rated on a five-point scale of: "[n]one, mild, moderate, marked, and extreme."  20 C.F.R. § 404.1520a(c)(4).  "[I]f the degree of limitation in each of the first three areas is rated [none or mild] . . . , then the reviewing authority generally will conclude that the claimant's mental impairment is not 'severe' and will deny benefits."  *Kohler*, 546 F.3d at 266 (citing 20 C.F.R. § 404.1520a(d)(1)).  But, if the claimant's mental impairment is determined to be severe, then the ALJ will "compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder [in Appendix 1]."  *Kohler*, 546 F.3d at 266; *see* 20 C.F.R. § 404.1520a(d)(2).  If the mental impairment is equally severe to a listed mental

disorder, the "claimant will be found to be disabled." *Id.* If not, then the ALJ assesses the Plaintiff's RFC pursuant to step four of the five-step evaluation process. *Id.* § 404.1520a(d)(3).

"[W]here there is evidence of alcoholism or drug use, the Commissioner must determine which physical and mental limitations would remain in the absence of substance abuse and whether these limitations would be disabling on their own." *Hernandez v. Astrue*, 814 F. Supp. 2d 168, 181 (E.D.N.Y. 2011) (citations omitted). "If the remaining limitations would still be disabling to the claimant on their own, then the claimant is entitled to SSI and SSD benefits." *Id.*

## C. The ALJ's Decision

On October 21, 2020, after applying the five-step sequential evaluation process, the ALJ issued a decision finding that Plaintiff is not disabled. (*See* R. at 13–24.) At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 28, 2018. her application date. (*Id.* at 15.)

At step two, the ALJ determined that Plaintiff had the following severe impairments: schizoaffective disorder, depressive disorder, anxiety disorder, gender dysphoria disorder, alcohol abuse, and cocaine abuse. (*Id.*) The ALJ further found that these impairments significantly limited Plaintiff's ability to perform basic work activities. (*Id.*)

At step three, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that met or equaled the medical severity of one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 15 (citing 20 C.F.R. §§ 416.920(d), 416.925, & 416.926).) The ALJ noted that Plaintiff had: (1) a mild limitation in understanding, remembering or applying information; (2) a moderate limitation in interacting with others; (3) a mild limitation with regard to concentrating, persisting, or maintaining pace; and (4) a

moderate limitation with regard to adapting or managing oneself.  (*Id.* at 15–17.)  As a result, applying the special technique, the ALJ found that Plaintiff's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation listed in Appendix 1, and thus, the severity of Plaintiff's mental impairments did not meet or medically equal the criteria for a finding of disabled.  (*Id.* at 17.)

At step four, the ALJ concluded that Plaintiff has the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations: "[Plaintiff] is limited to simple, routine tasks.  [Plaintiff] must work in a low stress job, defined as having only occasional decision-making and only occasional changes in the work setting.  [Plaintiff] can occasionally interact with the public and coworkers.  [Plaintiff] cannot work in an environment that requires strict product quotas or strict deadlines.  [Plaintiff] cannot work in a fast-paced work environment."  (*Id.* at 17.)  The ALJ arrived at these conclusions by considering "all symptoms and the extent to which they can be reasonably accepted as consistent with the objective medical evidence and other evidence."  (*Id.*)  The ALJ also considered the medical opinions and prior administrative medical findings in the record.  (*Id.*)

At step five, the ALJ found that considering Plaintiff's age (*i.e.*, as a "younger individual" under 20 C.F.R. § 416.963), limited education, lack of past relevant work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (*Id.* at 22–23.)

## III.   **DISCUSSION**

Plaintiff asserts that the Court should vacate the ALJ's determination that she is not disabled because (1) the ALJ failed to properly evaluate Dr. Anderson and Dr. Podczerwinsky's opinions in determining Plaintiff's RFC; and (2) the ALJ used the improper

legal standard to evaluate Plaintiff's credibility. (Pl. Mem., ECF No. 18 at 13–16.) Defendant opposes, asserting that the ALJ's decision is supported by substantial evidence and free of legal error. (Def. Mem., ECF No. 16 at 21–28.) The Court addresses each of Plaintiff's contentions in turn.

### A.    The ALJ Properly Assessed the Medical Opinions

Plaintiff argues that the ALJ failed to properly evaluate the medical opinions of Dr. Anderson and Dr. Podczerwinsky by not including Plaintiff's assessed "moderate limitation" in ability to "concentrate, persist, or maintain pace and adapt or manage herself" in Plaintiff's RFC. (Pl. Mem., ECF No. 18 at 14–15.) Substantial evidence, however, supports the ALJ's findings. (*See* R. at 17.)

The RFC is the measurement of the most the claimant can still do despite her limitations. 20 C.F.R. § 416.945(a)(1). RFC findings "need only 'afford[ ] an adequate basis for meaningful judicial review, appl[y] the proper legal standards, and [be] supported by substantial evidence such that additional analysis would be unnecessary or superfluous[.]" *Chadirjian v. Berryhill*, No. 17-CV-1476 (CBA), 2019 WL 518542, at *10 (E.D.N.Y. Feb. 11, 2019) (citing *McIntyre v. Colvin*, 758 F.3d 146, 150–51 (2d Cir. 2014)). "To determine a claimant's RFC, the ALJ must consider the claimant's 'impairment(s), and any related symptoms . . . [which] may cause physical and mental limitations that affect what [the claimant] can do in the work setting.'" *Long v. Berryhill*, No. 18-CV-1146 (PKC), 2019 WL 1433077, at *2 n.3 (E.D.N.Y. Mar. 29, 2019) (quoting 20 C.F.R. § 404.1545(a)(1)). "It is incumbent upon the ALJ to provide a detailed rationale for either rejecting the limitations or deeming them accommodated by the limitations stated as part of the RFC assessment[.]" *Id.* at *4; *see also, e.g.*, *Chadirjian*, 2019 WL 518542, at *10 (remanding because the ALJ

"inappropriately substituted" doctor's assessed limitations on claimant's concentration and memory with the ALJ's own judgment that claimant could perform work so long as she was "limited to simple, routine and repetitive tasks").

However, the ALJ's "failure to incorporate . . . limitations in a hypothetical" is harmless error if medical evidence demonstrates that a claimant can engage in simple, routine tasks despite the limitations in concentration, persistence, and pace, and if the hypothetical otherwise implicitly accounted for the limitation. *Jackson v. Comm'r of Soc. Sec.*, No. 16-CV-6183 (KAM), 2019 WL 7283518, at *8 (E.D.N.Y. Dec. 27, 2019). Ultimately, the ALJ is "entitled to weigh all of the evidence available" in making an RFC finding, which need "not perfectly correspond with any of the opinions of medical sources cited" so long as it is "consistent with the record as a whole." *Difiglia v. Comm'r of Soc. Sec.*, No. 22-CV-6825 (KAM), 2024 WL 1332502, at *15 (E.D.N.Y. Mar. 28, 2024).

Here, substantial evidence supports the ALJ's determination that Plaintiff's work should be limited to simple, routine tasks and that she must work in a low stress job, or jobs with "only occasional decision-making and only occasional changes in the work setting" and only "occasionally interact[ing] with the public and coworkers," and that she should not work in a fast-paced work environment that requires strict product quotas and deadlines. (*See* R. at 17.) This crafting of the RFC is "consistent with the medical opinion evidence on which the ALJ relied and thus . . . supported by substantial evidence." *See Difiglia*, 2024 WL 1332502, at *16. The ALJ thoroughly reviewed East New York Hospital Center's treatment notes from June 2018 through July 2020, Dr. Gottlich's July 2018 medical opinion, Dr. Anderson's August 2018 findings, Dr. Podczerwinsky's September 2020 interrogatory responses, and Plaintiff's August 2020 hearing testimony to support her findings regarding Plaintiff's RFC.

(*Id.* at 17–22.)  The ALJ relied, in part, on treatment notes that generally noted "cooperative behavior, normal motor activity, normal attention, normal alertness, normal speech, coherent and goal directed thought processes, normal thought content, normal memory, and fair to good insight, judgment, and impulsivity." (*Id.* at 18.)  The ALJ acknowledged that Plaintiff suffered from atypical auditory hallucinations, struggled with alcohol and drug abuse, and reported overwhelmed mood, anxiety, and irritableness at times, but "otherwise, normal findings were noted" in the treatment records throughout 2018 and 2019. (*Id.* at 18–19.)  The ALJ also relied on the objective findings by Dr. Gottlich, which found that, among other abilities, Plaintiff "can understand, remember, and apply simple and complex directions and instructions; *sustain concentration*; *perform a task at a consistent pace*; and be aware of normal hazards and take appropriate precautions." (*Id.* at 20 (emphasis added).)  Further, the ALJ relied on Dr. Podczerwinsky's findings that Plaintiff had "*mild* limitations in her ability to concentrate, persist, or maintain pace," among other mild to moderate limitations, and concluded that these findings were persuasive because they were generally supported by Dr. Gottlich's opinion and Plaintiff's treatment notes. (*Id.* (emphasis added).)  Finally, the ALJ reviewed Dr. Anderson's interrogatory responses and found that her answers were generally persuasive considering the other medical evidence on the record, as explained below.

Plaintiff contends that remand is appropriate because "the ALJ did not include all the assessed limitations by Dr. Anderson including the moderate limitation for the ability to concentrate, persist or maintain pace and adapt or manage[] [one]self" in the RFC. (Pl. Mem., ECF No. 18 at 14.)  As an initial matter, Plaintiff mischaracterizes Dr. Anderson's opinion, which actually stated that Plaintiff's ability to "maintain attention and concentration for extended periods" is "*not* significantly limited," while noting that Plaintiff's "ability to perform

19

at a consistent pace without an unreasonable number and length of rest periods" is "*moderately*

limited." (R. at 134 (emphasis added).) In contrast, the ALJ's decision incorrectly

summarized Dr. Anderson's opinion as: "Dr. Anderson opined the claimant has *moderate*

limitations in her ability to interact with others; concentrate, persist, or maintain pace; and

adapt or manage herself." (*Id.* at 21 (emphasis added).) Regardless, the ALJ limited the RFC

to "simple, routine tasks" without including any limitation on concentration. (*Id.*)

At the motion hearing before this Court, Plaintiff argued that limitation on

concentration refers to a claimant's ability to "stay on task," and that this is "separate and

apart" from the ability to complete "simple, routine tasks." (Tr. 7:9–9:12.) However, a

claimant "can engage in 'simple, routine, low stress tasks,' notwithstanding her physical

limitations and her limitations in concentration, persistence, and pace" if there is substantial

evidence in the record showing otherwise. *McIntyre*, 758 F.2d at 152; *Gauda v. Comm'r of

Soc. Sec.*, No. 23-594, 2024 WL 886595, at *1 (2d Cir. Mar. 1, 2024) (affirming ALJ's

conclusion that claimant could engage in "unskilled, low contact work" notwithstanding

moderate limitations on "concentrating, persisting or maintaining pace," among other

limitations). Likewise, here, the ALJ provided logical reasons to support her decision to

exclude Plaintiff's limitation to concentrate, persist, or maintain pace in the RFC. For

example, the ALJ relied on previous treatment notes and Dr. Gottlich's assessment that

Plaintiff could "sustain concentration" and "perform a task at a consistent pace" to conclude

that Plaintiff had "only mildly impaired attention and concentration." (R. at 16, 20.)

Moreover, the ALJ accounted for Dr. Podczerwinsky's opinion, which evaluated Plaintiff's

limitations:

> Dr. Podczerwinsky opined the claimant has mild limitations in her ability to understand, remember, or apply complex information; has mild limitations in her ability to concentrate, persist, or maintain pace; has mild to moderate limitations in her ability to interact with others; and has mild to moderate limitations in her ability to adapt or manage herself.

(R. at 25.) The ALJ further explained that "Dr. Podczerwinsky noted the claimant's limitations with concentration and complex information only apply if the claimant is under the influence of substances" and that "if the claimant is under the influence of substances then she has mild to moderate limitations in her ability to manage herself and interact with others." (*Id.* at 20.) The ALJ relied on this assessment, in conjunction with all the other medical evidence in the record, to conclude that "if the claimant is sober, she has no limitations with information, decision-making, or interacting with others," and therefore, Plaintiff had "only mildly impaired attention and concentration." (*Id.* at 21.)

Accordingly, substantial evidence supports the ALJ's RFC assessment that Plaintiff's work be limited to "simple, routine tasks" notwithstanding any limitations on concentration.[7]

## B.    The ALJ Properly Considered Plaintiff's Credibility

Plaintiff also argues that the ALJ failed to apply the proper legal standards to assess Plaintiff's credibility. (Pl. Mem., ECF No. 18 at 15–16.) The Court disagrees.

An ALJ "has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment . . . in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Clayton*, 2022 WL 985577, at *12 (citing *Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir. 1984)) (cleaned up). "An ALJ's credibility finding as

---

[7] At the motion hearing, Plaintiff's counsel raised, for the first time, that remand is warranted because the ALJ also failed to include limitations in ability to interact with supervisors. (Tr. 9:13–10:14.) The Court declines to evaluate this alternative basis for remand because it is waived.

to the claimant's disability is entitled to deference by a reviewing court." *Jackson*, 588 F. Supp. 3d at 579.  While the Court must uphold the ALJ's decision to discount a claimant's subjective complaints if the ALJ's findings are supported by substantial evidence, the ALJ's finding of credibility must still "be set forth with sufficient specificity to permit intelligible plenary review of the record." *Id.*

Social Security regulations provide a two-step process for evaluating a claimant's assertions of pain and other symptoms:

> First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce [the claimant's] symptoms."  [Second], the ALJ "must then evaluate the intensity and persistence of [the claimant's] symptoms" to determine the extent to which the symptoms limit the claimant's capacity for work.

*Watson v. Berryhill*, 732 F. App'x 48, 52 (2d Cir. 2018) (quoting 20 C.F.R. §§ 404.1529(c)(1) & 416.929(b)).  If symptoms suggest a greater severity of impairment that can be shown by medical evidence alone, the ALJ reviews "any other information . . . . such as symptoms, what medications, treatments or other methods [] to alleviate them, and how the symptoms may affect your pattern of daily living[.]"  *See* 20 C.F.R. §§ 404.1529(c)(3) & 416.929(c)(3). However, the ALJ is only required to discuss factors that are "pertinent to the evidence of record." *Clayton*, 2022 WL 985577, at *12.

Here, the ALJ applied the proper legal standard and concluded that under the two-step process, Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 18.)  The ALJ evaluated all pertinent factors to conclude that Plaintiff's testimony alleging disability due to mental problems "cannot be

found fully consistent with the evidence"—*i.e.*, (1) Dr. Gottlich, Dr. Podczerwinsky, and Dr. Anderson's medical opinions; (2) Plaintiff's ability to take public transportation; (3) her general independence with activities of daily living; and (4) the treatment notes generally noting cooperative and normal behavior "all suggest that the claimant has greater functional abilities than she alleges and support the finding she can perform work at the RFC." (*Id.* at 22.)

Finally, Plaintiff contends that "[t]he ALJ did not review and discuss the medications Plaintiff took, the treatment she received, her symptoms, her daily routine, and measures taken to relieve the symptoms." (Pl. Mem., ECF No. 18 at 16 (citing 20 C.F.R. §§ 404.1529(c)(3) & 416.929(c)(3).) To the contrary, as Defendant points out, the ALJ acknowledged all of these aspects by referencing Plaintiff's testimony. (Def. Mem., ECF No. 16 at 23–24 (citing R. at 22).) For example, the ALJ explicitly considered the testimony that Plaintiff takes hormone pills; that the medications cause sleepiness and drowsiness; that Plaintiff suffers from schizophrenia, depression, anxiety, and PTSD; that Plaintiff hears voices every day; that she takes public transportation only during non-rush hours; and that she feels paranoid, among many other symptoms. (R. at 22.) The ALJ further reasoned that Plaintiff testified that she can "dress herself, go shopping, do laundry, clean the apartment, and shower" and that she has been sober for about a year. (*Id.*) The ALJ considered the "totality of the evidence" to arrive at her credibility assessment. *Clayton*, 2022 WL 985577, at *12. Therefore, the ALJ applied the proper legal standard when evaluating Plaintiff's credibility.

## IV.   <u>CONCLUSION</u>

For the reasons stated above, Defendant's motion for judgment on the pleadings at ECF No. 16 is **granted**, Plaintiff's motion for judgment on the pleadings at ECF No. 17 is **denied**,

and the ALJ's decision is **affirmed**.  The Clerk of the Court is respectfully directed to enter

judgment and to close this case.

**SO ORDERED.**

Brooklyn, New York
October 24, 2024

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge

24